UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARILYN AREND,

    Plaintiff,

v.                                      Case No.  8:11-CV-771-T-DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

**OPINION AND ORDER**[1]

The Plaintiff filed an application for a period of disability and disability insurance benefits on September 22, 2006, alleging disability beginning April 3, 1997, the alleged onset date, through December 30, 1998, the date last insured ("DLI").  This claim was denied initially and upon reconsideration.  On April 6, 2009, a video hearing was held before Administrative Law Judge ("ALJ") Steven D. Slahta, from Tampa, Florida [Tr. 15]. On May 20, 2010, Administrative Law Judge Slahta issued his decision denying Plaintiff's application. [Tr. 15-23]  The Appeals Council denied Plaintiff's Request for Review on February 9, 2011, making the ALJ's decision the final decision of the Commissioner.  For the reasons set out herein, the decision is **AFFIRMED**.

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated June 27, 2010.  (Doc.# 11).

-1-

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

**I.      SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ
          DECISION AND STANDARD OF REVIEW.**

   **A.      Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his/her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

   **B.      Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). The Court must, "review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)(citing *Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir.1997))."Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Id.* "Even if the evidence preponderated against the

Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990)). The Court must, "view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986)). However, the Court, "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)(citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ must follow a five step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is doing any substantial gainful activity then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work. If the claimant can still do his past relevant work then he will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if he can make an adjustment to other work. If the claimant can make an adjustment to other work then the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287 (1987); *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty*, 245 F.3d at 1278 n.2.

## II.     Review of Facts

### A.     Background Facts

On September 22, 2006, Plaintiff filed her application for disability insurance benefits alleging disability beginning April 3, 1997, through DLI of December 30, 1998. The Decision of ALJ Slahta dated May 20, 2009, denied Plaintiff's claim for benefits. (Tr. 15-23).

### B.     The ALJ's Findings

At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of April 3, 1997, though her date last insured of December 30, 1998 (Tr. 17).

At Step 2, the ALJ found that Plaintiff has the following severe impairments: severe migraines, shoulder fracture and hip fracture. (Tr. 17).

At Step 3, the ALJ found that during the period in question, Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1, Subpart P, Regulation No. 4.

At Step 4, the ALJ found Plaintiff was unable to perform her past relevant work as an insurance adjuster which was described by the vocational expert as light work with an SVP of 6, that was performed as medium and sedentary. The ALJ determined Plaintiff can only perform unskilled, low stress, 1-2 step routine repetitive task jobs (Tr. 21).

At step 5, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work as defined in 20 C.F.R. 404.1567(a). Thus, with the testimony of a vocational expert ("VE"), the ALJ found Plaintiff not disabled at step five of the sequential evaluation. 20 C.F.R. §§416.1525 and 416.1526.

### C. Plaintiff's Medical History

Plaintiff was born on December 17, 1955, and was 43 years old (and considered "a younger individual,") when she was last insured for benefits, and was 54 years old when the ALJ issued his decision (Tr. 12-29). Plaintiff obtained a general equivalency diploma ("GED") and a Master's degree (Tr. 27, 111). Plaintiff had past relevant work experience as an insurance adjuster and owner of a computer education business (Tr. 28, 158-65).

Plaintiff alleged an inability to work due to severe migraines, limitations of the shoulder and limitations of the hip, with chronic pain. Plaintiff needs to establish eligibility for disability insurance benefits under Title II of the Social Security Act during the narrow relevant period from April 3, 1997, her alleged onset date, through December 31, 1998, her date last insured (Tr. 111, 118-119).

Dr. Edward Davis treated Plaintiff for complaints related to cluster headaches vs. paroxysmal hemicrania beginning in 1992 (Tr. 258-261). On October 16, 1992, Dr. Davis sent a letter to A. J. Piccola, D.O., regarding his evaluation of Plaintiff's headaches. Plaintiff had advised Dr. Davis that she had recurrent episodes of severe headaches since 1984; one headache in 1988, a "flurry of headaches" for about 1-2 months in 1990, one headache in 1991, and then on the 4th of October (year not noted) she began having daily headaches. IMPRESSION:

> "I have never been entirely comfortable with her diagnosis of cluster as the duration of her headaches seems inappropriate and, as you are aware, cluster shows a much stronger male than female predominance".
>
> "The plan is to give her a trial on Indocin 25 mg. 3 or 4 times a day. I have given her a prescription for Stadol nasal spray for headache abortive purposes. She is to call me Tuesday to let me know if we have had any success with these interventions. If not, I would probably recommend going to a short course of Lithium and Prednisone. I will keep you appraised of her progress".

(Tr. 258-260).

At the next visit with Dr. Davis, Plaintiff reported she was under less stress after quitting her job at Allstate. Plaintiff also reported she had only two mild headaches per week with use of Verapamil and Toradol (Tr. 263). In 1995, Plaintiff was prescribed Depakote and Verapamil by Dr. Davis (Tr. 282-83). In 1996, Dr. Davis reported that Plaintiff was "headache free" with use of Verelan and Depakote (Tr. 285-87, 291).

Plaintiff was hospitalized from April 2 through April 8, 1997, for treatment from a fall that resulted in a fracture of the right hip (Tr. 204-11). Plaintiff was also diagnosed with

fibromyalgia and a history of migraine headaches (Tr. 207-08). X-rays confirmed a right hip fracture and Plaintiff underwent open reduction and internal fixation surgery (Tr. 204-05, 206). Plaintiff was released for follow-up with a walker (Tr. 204).

On April 10, 1997, Dr. John Fifer, Jr. began treating Plaintiff for her right hip fracture (Tr. 241-42). Plaintiff had obvious pain in the right hip but no real swelling of her leg (Tr. 241-42).

On July 14, 1997, Dr. Davis noted only "occasional temporal headaches relieved with Toradol" (Tr. 293). A bone density scan revealed osteopenia of the lumbar spine and left hip (Tr. 355-56).

On October 20, 1997, Dr. Davis noted some mild left-sided headaches during the course of a stressful move, but no full blown cluster headaches (Tr. 294).

On December 30, 1997, Dr. Fifer noted Plaintiff was "doing much better" with the right hip injury, but had some underlying fibromyalgia and stiffness (Tr. 237).

From January 28 to June 12, 1998, Dr. Neil Schultz treated Plaintiff for left shoulder pain and right hip pain (Tr. 213-20). Plaintiff exhibited limited range of motion of the left shoulder (Tr. 219-20). An MRI of the left shoulder on January 31,1998, showed deformity of the anterior aspect of the glenoid which could represent a labral tear or fracture (Tr. 218, 221, 590).

On February 25, 1998, Dr. Davis noted "mild" migraine headaches relieved with Duract (Tr. 295). On March 30, 1998, Dr. Davis noted Plaintiff was "pretty much headache free" (Tr. 296, 297).

On March 10, 1998, Dr. Fifer noted Plaintiff's shoulder joint was intact with "a little tenderness" (Tr. 233). On March 13, 1998, Plaintiff started physical therapy after her shoulder sling was discontinued (Tr. 217). On May 5, 1998, Dr. Fifer noted Plaintiff was doing well with "a bit of a limp" in the right hip and a "bit of weakness" in the left shoulder (Tr. 232).

On June 12, 1998, Dr. Schultz noted excellent progress with increased range of motion of the left shoulder (Tr. 213). Dr. Schultz noted a "good deal of pain" and diagnosed "improving" adhesive capsulitis of the left shoulder (Tr. 213).

On September 10, 1998, Plaintiff reported to Dr. Davis that her migraines were relieved within 15 minutes with use of Imitrex (Tr. 299).

Subsequent to the expiration of her insured status, Dr. Fifer admitted Plaintiff in May of 1999 for removal of metal screws from her hip (Tr. 229-30). Plaintiff was released with use of a cane (Tr. 229). In October of 1999, Dr. Fifer noted some aching and pain with exercise (Tr. 225). Plaintiff reported she was losing weight with the assistance of trainers (Tr. 225).

After Plaintiff's DLI of December 30, 1998, the record shows that in June of 2000, Plaintiff was able to travel to Alaska (Tr. 316). In April of 2002, Plaintiff traveled to Los Angeles (Tr. 326). In January of 2003, Dr. Davis stated that he had treated Plaintiff for cluster headaches associated with paroxysmal attacks which can be extremely debilitating followed by long periods of inactivity of the disease (Tr. 328). Dr. Davis stated with treatment Plaintiff had been in relative remission for several years (Tr. 328). On March 25, 2004, Dr. Davis stated in a letter that Plaintiff should remain on leave of absence from work for 30 days (Tr. 337).

On November 21, 2006, a one page Case Analysis Report was submitted by Brenda P. Perry (title unknown) for the SSA. Notes of record as follows: "50 year old female. Alleges disability due to hip fx, shoulder fx, and migraines. AOD= 4/3/97. DLI= 12/21/88. MER obtained from TS listed is insufficient as of DLI". (Tr. 632)

On March 2, 2007, Thomas Renny, D.O., medical consultant for the SSA completed a physical residual functional capacity assessment form (Tr. 633-640). Notes of record as follows: "Claimant alleges s/p a right hip fracture, s/p left shoulder fracture and migraines with a DLI of 12/98. TS exams just prior to the DLI report adequate progress after the right hip fracture and no listing level functional loss. TS reports improvement in the left shoulder after the fracture. The Left shoulder was becoming stronger and no listing level functional loss was reported. TS did not report migraine headache related profound functional loss". (Tr. 634).

### III.   SPECIFIC ISSUES AND CONCLUSIONS OF LAW:

  **A. THE ALJ PROPERLY DETERMINED THAT NO CONFLICT EXISTS BETWEEN THE "VE"AND THE DOT'S DESCRIPTION OF "TICKET CHECKER AND FINAL ASSEMBLER" AS POSITIONS PLAINTIFF CAN PERFORM WITHIN HER "RFC"**

On appeal, Plaintiff contends that the ALJ should not have relied on the jobs identified by the VE due to a conflict with the DOT. (Pl.'s Br. at 6-14). The ALJ determined Plaintiff retained the RFC to perform unskilled sedentary work with additional limitations including: no overhead reaching; a sit/stand option; no hazards; no climbing; low stress; 1-2 step routine and repetitive tasks; and working with things instead of people (Tr. 18-21). In reaching his conclusions, the ALJ considered the evidence, including the documentary evidence and Plaintiff's testimony, and concluded that Plaintiff's statements concerning her

impairments and their impact on her ability to work were not totally credible (Tr. 18-21). 20 C.F.R. § 404.1529.

At the hearing, the ALJ posed a hypothetical question to the VE -

"assuming an individual with a college degree, two college degrees, who is precluded from performing all but sedentary work with no overhead reaching, sit/stand, no hazards, no climbing, unskilled, low stress defined as one and two step processes, routine and repetitive tasks, primarily working with things rather than people, entry level.  With those limitations , can you describe two jobs consistent with the *Dictionary of Occupation Titles?"* (Tr. 62).

In response to the ALJ's hypothetical, the VE indicated that such an individual could perform work at the sedentary level as a "ticket checker and final assembler. [*Dictionary of Occupational Titles*], DOT number 219.587-010" (Tr. 62). The VE testified that the checker job had a specific vocational preparation (SVP) of "2."

Plaintiff suggests that a conflict exists between the ALJ's limitation to "1-2 step routine and repetitive tasks" and the DOT description of the "general educational development (GED)" for the ticket checker position. (Pl.'s Br. at 8-14).  The DOT defines GED as:

"aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school or college. However, it may be obtained from experience and self-study. The GED scale is composed of three divisions: Reasoning development, Mathematical development, and Language development. The description of the various levels in language and mathematical development are based on the curricula taught in schools throughout the United States".

(Pl.'s Br., Ex. 2, p. 1). The evidence of record demonstrates Plaintiff has a Master's degree in education (Tr. 27, 144).

The ALJ limited Plaintiff to "1-2 step routine and repetitive tasks" which is consistent with the DOT description for the ticket checker position as "Reasoning Level 3 – apply common sense understanding to carry out instructions furnished in written, oral or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." (Pl.'s Br., Ex. 1, pp. 2-5). Thus, there is no apparent conflict between the DOT and the testimony of the VE.

The ALJ limited Plaintiff to a sit/stand option (Tr. 62). The DOT does not account for a sit/stand option and the ticket checker description confirms it is a sedentary job that involves "sitting most of the time, but may involve walking or standing for brief periods of time." (Pl.'s Br., Ex. 1, p. 2). Additionally, the ALJ limited Plaintiff from overhead reaching, and the ticket checker description indicates the job requires "constant reaching exists 2/3 or more of the time," but does not indicate a requirement for overhead reaching. (Pl.s Br., Ex. 2, p. 4).

Plaintiff also contends that the testimony of the VE conflicts with the DOT description for final assembler, DOT 713.687-018. ( Pl.'s Br. at 9-13). Plaintiff's arguments about the GED level of the optical assembler position are without merit as the DOT describes the position as "reasoning level 1 – apply common sense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." (Pl.'s Br., Ex. 3, p. 2).

As noted, the DOT does not account for a sit/stand option and the final assembler description confirms it is a sedentary job that involves "sitting most of the time, but may involve walking or standing for brief periods of time." (Pl.'s Br., Ex. 3, p. 2). The DOT

describes the final assembler job as requiring frequent reaching that "exists from 1/3 to 2/3 of the time," but does not indicate a requirement for overhead reaching. ( Pl.'s Br., Ex. 3, p. 4). Although Plaintiff states the national numbers cited by the VE for the final assembler position are "suspect and suspicious", Plaintiff does not present any evidence undermining the VE's testimony that 250 of these jobs existed in the local region, and approximately 9,000 of these jobs existed in the state of Florida (Tr. 63). (Pl.'s Br. at 13). Thus, the VE established that there were a significant number of jobs that a person with the limits identified by the ALJ could perform. *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1986). Substantial evidence supports the ALJ's reliance on the VE testimony and the ALJ properly determined that Plaintiff was not disabled pursuant to 20 C.F.R. § 404.1520(g) (Tr. 22-23).

The ALJ complied with his statutory and regulatory responsibility to assess Plaintiff's RFC and, after considering the evidence, to decide whether she was disabled. The ALJ properly relied on the substantial evidence discussed above to make his findings. Plaintiff's medical records and the ALJ's review of the record as a whole support the RFC determination.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. The Plaintiff is not entitled to a period of disability or disability insurance benefits under sections 216(I) and 223 of the Social Security Act.

Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g) and §1383(c)(3). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 8th day of August, 2012.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:

All Parties of Record
Michael A. Steinberg, Esquire
John F. Rudy, III Esquire